**WO**                                                                                          ASH

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mokhira Khasanova, | No. CV-26-00763-PHX-JCH (JFM) |
| Petitioner, | |
| v. | **ORDER** |
| Eric Rokosky, et al., | |
| Respondents. | |

Petitioner filed this action under 28 U.S.C. § 2241 challenging her immigration detention. (Doc. 1). On February 5, 2026, the Court issued an Order to Show Cause why the Petition should not be granted. (Doc. 3). Upon review of the briefing (Docs. 6, 12–13),[1] the Court will grant the Petition in part and order that Petitioner receive a bond redetermination hearing within seven days.

## I.      BACKGROUND

Petitioner is a native of Uzbekistan and citizen of Russia. (Doc. 1 at 2). In December 2023, Petitioner travelled to Mexico and arranged through the CBPOne app to request parole into the United States. (*Id.*). On August 8, 2024, pursuant to an appointment made through the CBPOne app, Petitioner presented herself to immigration authorities and was taken into custody. (*Id.*). Petitioner thereafter timely filed for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.*). On April 30, 2025, an immigration judge ("IJ") granted Petitioner asylum. (Doc. 1-1 at 27–30). The

---

[1] Petitioner has also filed a Motion to Expedite this matter.  (Doc. 8).  In light of this Order, the Court will deny the Motion as moot.

government appealed that decision (Doc. 1-1 a 32-34), and the Board of Immigration Appeals ("BIA") subsequently remanded the matter back to the IJ. Notably, however, the only issues on remand were whether Petitioner was also a citizen of Uzbekistan, and, if so, whether she was also entitled to protection from removal to that country in addition to Russia. (Doc. 12-1 at 5). On April 30, 2026, the IJ again granted Petitioner asylum as to Russia, and additionally further granted her asylum as to Uzbekistan. (*Id.* at 15). The government again appealed, and that appeal remains pending. (Doc. 13-1 at 2–3).

As of the date of this Order, Petitioner has been detained for nearly two years.

**II.    28 U.S.C. § 2241 WRIT OF HABEAS CORPUS**

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'" (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807))); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[2] challenging

[2]    Undersigned will use the term "noncitizen" unless a quoted statute or court decision uses the term "alien." This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023), which specifically states:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Id.* 527 n.1 (cleaned up).

their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner only challenges her prolonged detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

### III. DISCUSSION

#### A.     Statutory Basis for Petitioner's Detention

"A noncitizen's place 'within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.'" *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008)). Respondents maintain—and Petitioner does not dispute—that Petitioner is "an applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Doc. 6 at 3–5). Respondents are correct. Where, as here, an asylum officer determines at the time of the credible fear interview that the noncitizen has a credible fear of persecution, the noncitizen must "be detained for further consideration of [his] application for asylum" under 8 U.S.C. § 1225(b)(1)(B)(ii). Although the IJ granted Petitioner asylum on two separate occasions, the government appealed both grants. Considering that the IJ's most recent grant of asylum remains pending before the BIA, Petitioner does not have an administratively final grant of asylum. Hence, § 1225(b)(2) continues to govern Petitioner's detention in this action.

#### B.     Due Process

This does not end the matter, however, as a petitioner may nevertheless be entitled to relief under the Constitution even when detained under statute. The Court thus turns to Petitioner's due process claim. The Court's due process analysis is separated into two steps: First, the Court asks "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the [government] were

constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### 1.    Liberty Interest

"A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). If the Court finds a cognizable liberty interest, it then determines whether the administrative procedures are sufficient considering the "particular situation."[3] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In the instant action, Petitioner argues she has a fundamental liberty interest in her freedom (Doc. 1 at 7–9), while Respondents maintain she does not (Doc. 1 at 7–9; Doc. 6 at 4–5).  Respondents urge that Petitioner "has, at most, sharply limited due process rights, as an alien subject to the 'entry fiction.'" (Doc. 6 at 4).

The Court finds that the entry fiction doctrine does not foreclose Petitioner's due process claim as to her present detention. The entry fiction doctrine is based upon the "distinction between those aliens who have come to our shores seeking admission," such as Petitioner, "and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950))). Those noncitizens on the "threshold of initial entry" are not considered "to have 'effected an entry.'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of

---

[3] The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships.  Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Id.* at 139. Therefore, while a noncitizen may be physically present within the country, the noncitizen is "still in theory of law at the boundary line and ha[s] gained no foothold in the United States." *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925)).

This distinction is predicated upon the following "fundamental proposition: 'The power to admit or exclude aliens is a sovereign prerogative.'" *Thuraissigiam*, 591 U.S. at 139 (cleaned up) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). "The Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit, . . and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)).

Based on the foregoing, Respondents extrapolate that Petitioner, due to the entry fiction doctrine, "is entitled only to those procedures granted by statute because she is not entitled to procedural due process protections." (Doc. 6 at 5.) The Court disagrees with Respondents approach. Based on a review of current district court interpretation and a plain reading of Supreme Court precedent, it appears that, outside of the context of admissions, a noncitizen has a liberty interest to be free from civil confinement once their detention has become prolonged.

Undersigned is persuaded by the interpretation of numerous courts, both in this District and its sister districts. These courts have held that the entry fiction doctrine applies only to the procedural rights of noncitizens regarding *admission*—not every procedure in the immigration context—*i.e.*, the doctrine is inapplicable where the petitioner challenges his or her length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026);[4] *see also Padilla v.*

---

[4] Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by *D.V.D.*'s analysis. Furthermore, the District of Arizona previously relied upon *D.V.D.* in *Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *3–4 (D. Ariz. Mar. 9, 2026).

*U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable); *Salamakhin v. Noem*, No. CV-26-00330, 2026 WL 1250296, at*4–5 (D. Ariz. May 6, 2026) (applying *Padilla* and *D.V.D.*). These decisions and similar decisions in other district courts interpreting the entry fiction doctrine, are based on a finding that arriving noncitizens, such as Petitioner, have "only those rights *regarding admission* that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140 (emphasis added).

For example, the district court in *D.V.D.* recently illustrated why the entry fiction doctrine does not foreclose Petitioner's as-applied challenge to the length of her detention. In *D.V.D.*, the court noted that, although the entry fiction doctrine "provides an exception to the otherwise geographic scope of the Due Process Clause," the doctrine only impacts those due process rights "regarding admission." *D.V.D.*, 2026 WL 521557, at *30 (cleaned up) (quoting *Thuraissigiam*, 591 U.S. at 140). The court proceeded to "distinguish rights regarding admission," which relate to the government's "sovereign authority to admit noncitizens only in cases as it may see fit," with other interests that might be implicated by the Due Process Clause. *D.V.D.*, 2026 WL 521557, at *30 (cleaned up). Because the *D.V.D.* petitioners neither challenged their orders of removal nor the process resulting in those orders, the government's sovereign prerogative was not implicated. *Id.* at *30–31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Hence, the entry fiction doctrine did not bar the petitioners' non-admissions due process challenges. *Id.* at *31.

In a truncated fashion, the court in *Padilla* refuted the government's entry fiction argument. There, the court rejected the government's claim that the entry fiction doctrine broadly applied to any due process challenge, noting that such an assertion "is untethered to the claim in *Thuraissigiam* and the [Supreme] Court's reasoning." *Padilla*, 704 F. Supp. 3d at 1171. Rather, the entry fiction doctrine is constrained "only [to] those rights regarding admission that Congress has provided by statute." *Id.* at 1172 (emphasis omitted) (quoting *Thuraissigiam*, 591 U.S. at 140). Hence, where a petitioner "do[es] not challenge the

admission process in any way or assert a right to remain in the United States," the entry fiction doctrine does not apply. *Padilla*, 704 F. Supp. 3d at 1172.

Neither a bond hearing nor release equate to admission. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). Thus, Petitioner's challenge to her length of detention does not invoke any "rights regarding admission." *Thuraissigiam*, 591 U.S. at 140; *see D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause.").

Neither *Padilla* nor *D.V.D.* challenge "more than a century of Supreme Court caselaw confirm[ing] that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's admissibility." *D.V.D.*, 2026 WL 521557, at *30; *Padilla*, 704 F. Supp. 3d at 1171–72. Rather, the decisions apply Supreme Court precedent to find that where a party "challenge[s] neither their orders of removal nor any of the processes that produced those orders, their claims do not implicate, nor even relate to, the issue of their admissibility." *D.V.D.*, 2026 WL 521557, at *31; *Padilla*, 704 F. Supp. 3d at 1172 (finding that the class of plaintiffs were not challenging the admissions process nor their right to stay in the country, meaning that the entry fiction doctrine did not bar their due process claim).

Based on this persuasive interpretation and "the Ninth Circuit's articulation of 'grave doubts' about the constitutionality of 'any statute that allows for arbitrary prolonged detention without any process,'" the Court finds that the entry fiction doctrine does not prohibit as-applied challenges to a petitioner's length of detention. *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (quoting *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. '[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))).

This holding comports with the Supreme Court's extensive catalog of immigration decisions. The Supreme Court has repeatedly reiterated that in American society, "liberty is the norm," which necessitates that civil detention "is the carefully limited exception." *Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *Salerno*, 481 U.S. at 755); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008))).

This contention is no less valid when considering that Petitioners are not citizens, *see Yick Wo v. Hopkins*, 118 U.S. 356, 368–69 (1886), because "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of" the "millions of aliens within the jurisdiction of the United States." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." (citing *The Japanese Immigration Case*, 189 U.S. 86, 100–01 (1903))); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by th[e Fifth and Sixth Amendments], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law.").

"The constitutional sufficiency of [due process] procedures provided in any situation, of course, varies with the circumstances." *Landon*, 459 U.S. at 33–34. Here, it appears that affording Petitioner constitutional due process protections not related to admission is congruent with binding precedent. Therefore, the Court declines to follow Respondents' characterization of the entry fiction doctrine.

. . . .

. . . .

. . . .

### 2.    *Due Process Rights Regarding Petitioner's Prolonged Detention*

In arguing that her detention has become unconstitutionally prolonged, Petitioner cites *Mathews v. Eldridge*. (Doc. 1 at 9). However, Petitioner does not apply the three-part *Mathews* test[5] (*Id.*), nor do Respondents address *Mathews* (Doc. 6).

Courts in this circuit and beyond have grappled over what test to use when determining whether procedural due process requires relief for a noncitizen detained under § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor test from *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019))); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the 6-factor *Banda* test, but calling it the *Jamal A* test (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019))); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test (citing *Mathews*, 424 U.S. at 335)).

Out of the abovementioned tests, the Court finds the *Banda* test the most applicable to the situation at hand. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews* and *Lopez*[6] tests.

---

[5]    Under the *Mathews* test, the Court considers: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

[6]    Under the *Lopez* test, "the Court will look to the total length of detention to

Beginning with *Mathews*, the Court concurs with other district courts that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07.[7]

Turning next to the *Lopez* test, the Court notes this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and is] in essence, a truncated version of the factors enumerated in *Banda*." *Andrews*, 1:25-cv-00333-JLT-HBK, at \*14. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for

---

date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

[7] In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, the Court finds that Petitioner has a strong private interest in her liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha*, 504 U.S. at 80)).

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at \*6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at \*7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's nearly two-year detention, the Court concludes that due process requires she be provided with an individualized bond hearing.

noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply it.

> i.     *Length of Detention*.

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold their "detentions become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026). As noted, Petitioner has been held in DHS custody for nearly two years, well beyond the six-month threshold, and in accord with the length of confinement other courts have found to be prolonged. *See, e.g.*, *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."). Accordingly, the Court finds the length of Petitioner's detention strongly favors granting relief.

> ii.     *Likely Duration of Future Detention*.

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain, considering the government's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years

during the adjudication of Respondents' appeal to the BIA.").

### iii.     Conditions of Detention.

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).  Petitioner asserts—and provides evidence to support—that her continued detention has exacerbated various medical issues, for which she has had difficulty obtaining treatment. (Doc. 1 at 3, 7; Doc. 1-1 at 2-20). Respondents do not address these conditions. Accordingly, the Court finds that this factor favors Petitioner.

### iv.     Delays in Removal Proceedings.

Next, the Court will analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up). Here, there have been no delays caused by Petitioner. Petitioner has "followed all procedures and requirements set by DHS," and has not contested any of the IJ's orders. Consequently, this factor favors Petitioner.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11

- 12 -

(S.D.N.Y. May 23, 2018)). Respondents have twice appealed the IJ's decisions granting Petitioner asylum status. The Court presumes Respondents appealed these decisions efficiently and in good faith and finds the fifth factor is neutral.

> ### v.   *Likelihood of Removal*.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11). Based on the current record, Petitioner has twice been granted asylum, now to two different countries. Respondents offer no evidence to support that their appeal will be successful. Therefore, the sixth factor favors Petitioner.

> ### vi.   *Conclusion*.

Because the *Banda* factors favor Petitioner, the Court concludes Petitioner's continued detention under § 1225(b)(2) is unreasonable. Accordingly, Petitioner is entitled to relief.

## C.   Remedy.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a § 1225(b)(2) petitioner and granting a bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

. . . .

## IV. Order

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Petitioner's request for a bond hearing and is **DENIED** as to Petitioner's request for immediate release.

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **SEVEN (7) CALENDAR DAYS** of this order.

1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community; or

2. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report with the Court within **THREE (3) DAYS** of the bond hearing.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Expedite (Doc. 8) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that any motion for fees and costs pursuant to 28 U.S.C. § 2412 shall be filed within 30 days of final judgment. *See* 5 U.S.C. § 504; 28 U.S.C. § 2412(d)(1)(B), (d)(2)(g).

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly, and close this case.

Dated this 24th day of June, 2026.

John C. Hinderaker
United States District Judge